IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 24-70049** |
| CHRISTOPHER CASTILLO, LINDA | § | |
| SALAZAR CASTILLO, | § | **CHAPTER 7** |
| | § | |
| Debtors. | § | |
| | § | |
| KAPITUS SERVICING. INC. AS | § | |
| SERVICING AGENT FOR KAPITUS LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 24-7005** |
| | § | |
| CHRISTOPHER CASTILLO and LINDA | § | |
| SALAZAR CASTILLO, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION

Kapitus Servicing, Inc., as servicing agent for Kapitus LLC, filed the instant complaint under 11 U.S.C. § 523, objecting to the dischargeability of a pre-petition debt owed to Kapitus Servicing, Inc., as servicing agent for Kapitus LLC by the defendants Christopher Castillo and Linda Salazar Castillo. On March 31, 2026 – April 1, 2026, the Court conducted a trial at which defendants Christopher Castillo and Linda Salazar Castillo moved for judgment on partial findings under Federal Rule of Civil Procedure 52, which is made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7052.

For the reasons stated herein, this Court holds that under (1) Count I – non-dischargeability of debt under 11 U.S.C. § 523(a)(2)(a) for false pretenses, false representations, and actual fraud (as to both Defendants), the pre-petition debt owed to Kapitus Servicing, Inc., as servicing agent for Kapitus LLC by the defendants Christopher Castillo and Linda Salazar Castillo is non-

dischargeable; under (2) Count II – non-dischargeability of debt under 11 U.S.C. § 523(a)(2)(b) for use of a statement in writing that is materially false respecting the debtor's or an insider's financial condition (as to both Defendants), the pre-petition debt owed to Kapitus Servicing, Inc., as servicing agent for Kapitus LLC, by the defendants Christopher Castillo and Linda Salazar Castillo is dismissed; under (3) Count III – non-dischargeability of debt under 11 U.S.C. § 523(a)(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny (as to both Defendants), the pre-petition debt owed to Kapitus Servicing, Inc., as servicing agent for Kapitus LLC, by the defendants Christopher Castillo and Linda Salazar Castillo is dismissed; and under (4) Count IV – non-dischargeability of debt under 11 U.S.C. § 523(a)(6) for willful and malicious injury by the debtors (as to both Defendants), the pre-petition debt owed to Kapitus Servicing, Inc., as servicing agent for Kapitus LLC, by the defendants Christopher Castillo and Linda Salazar Castillo is non-dischargeable.

Accordingly, Kapitus Servicing, Inc., as servicing agent for Kapitus LLC, is granted judgment as against Christopher Castillo and Linda Salazar Castillo in the amount of $710,241.07 (comprised of the contractual balance of $496,974.00, plus $84,417.32 in interest at a 10% rate covering the period of 6/17/2022 to 2/26/2024 (including a $136.16 per diem), $125,164.75 in attorney's fees and costs, $2,500 in default fees, and $1,185 in ACH fees) and such judgment is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A) and § 523(a)(6); and pursuant to Federal Rule of Civil Procedure 54(d)(2)(B)(ii) shall accrue at an interest rate of 4.04% until paid.

## I.   FINDINGS OF FACT

This Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52 ("*Rule*"), which is made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7052 ("*Bankruptcy Rule*"). To the extent that any finding

of fact constitutes a conclusion of law, it is adopted as such. To the extent that any conclusion of law constitutes a finding of fact, it is adopted as such. This Court made certain oral findings and conclusions on the record. This Memorandum Opinion supplements those findings and conclusions. If there is an inconsistency, this Memorandum Opinion controls.

## II. BACKGROUND

1. On February 26, 2024, (the "*Petition Date*") Christopher Castillo ("*Mr. Castillo*") and Linda Salazar Castillo ("*Ms. Castillo*") (collectively, the "*Debtors/Defendants*") filed for bankruptcy protection under chapter 7 of the Bankruptcy Code,[1] initiating the instant bankruptcy case.[2]

2. On May 24, 2024, Kapitus Servicing, Inc., as servicing agent for Kapitus LLC ("*Kapitus*" or "*Plaintiff*") filed the instant "Complaint to Determine Non-Dischargeability of Debt and for Denial of Dischargeability of Debt Owed to Kapitus Servicing, Inc" (the "*Complaint*").[3]

3. On July 26, 2024, Defendants filed their "Original Answer."[4]

4. On November 24, 2025, Plaintiff and Defendants filed their "Proposed Joint Pretrial Statement," in which Plaintiff and Defendants consented to entry of final judgment by this Court pursuant to Bankruptcy Rule 7008.[5]

5. On March 31, 2026 – April 1, 2026, this Court held a trial.

6. On April 1, 2026, at trial, Defendants moved for judgment on partial findings under Rule 52, which is made applicable to adversary proceedings by Bankruptcy Rule 7052.

## III. CONCLUSIONS OF LAW

### A. Jurisdiction and Venue

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334 and exercises its jurisdiction in accordance with Southern District of Texas General Order 2012–6.[6] Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court

---

[1] Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e., §) thereof refers to the corresponding section in 11 U.S.C.
[2] "Bankr. Dkt." refers docket entries made in the Debtor's bankruptcy case, No. 24-70049. Entries made in Plaintiff's Case number 24-7005 shall take the format of Dkt. No.__.
[3] Dkt. No. 1.
[4] Dkt. No. 8.
[5] Dkt. No. 35, at 2.
[6] *Order of Reference to Bankruptcy Judges*, Gen. Order 2012–6 (S.D. Tex. May 24, 2012).

will appropriately preside over the matter.[7] This Court concludes that determinations of dischargeability are core proceedings under 28 U.S.C. § 157(b)(2)(I). This proceeding is also core under the general "catch-all" language because such a suit is the type of proceeding that can only arise in the context of a bankruptcy case.[8]

This Court may only hear a case in which venue is proper.[9] 28 U.S.C. § 1409(a) provides that "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." The Debtors' underlying bankruptcy is pending in this Court,[10] and so venue of this proceeding is proper.

## B. Constitutional Authority to Enter a Final Judgment

While bankruptcy judges can issue final orders and judgments for core proceedings, absent consent, they can only issue reports and recommendations on non-core matters.[11] This Court concludes that determinations of dischargeability are core proceedings under 28 U.S.C. § 157(b)(2)(I). Accordingly, this Court concludes that the narrow limitation imposed by *Stern v. Marshall* does not prohibit this Court from entering a final judgment here.[12] Alternatively, this Court has constitutional authority to enter a final judgment because all parties in interest have

---

[7] 28 U.S.C. § 157(a); *see also Order of Reference to Bankruptcy Judges*, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).

[8] *See Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under § 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.") (quoting *Wood v. Wood (In re Wood),* 825 F.2d 90, 97 (5th Cir. 1987)).

[9] 28 U.S.C. § 1408.

[10] Bankr. Dkt. No. 1.

[11] *See* 28 U.S.C. §§ 157(b)(1), (c)(1); *see also Stern v. Marshall*, 564 U.S. 462, 480 (2011); *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1938–40 (2015).

[12] Dkt. No. 35 at 2; *see, e.g.*, *Badami v. Sears (In re AFY, Inc.)*, 461 B.R. 541, 547-48 (8th Cir. B.A.P. 2012) ("Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional."); *see also Tanguy v. West (In re Davis)*, No. 00-50129, 538 F. App'x 440, 443 (5th Cir. 2013) ("[W]hile it is true that *Stern* invalidated 28 U.S.C. § 157(b)(2)(C) with respect to 'counterclaims by the estate against persons filing claims against the estate,' *Stern* expressly provides that its limited holding applies only in that 'one isolated respect' . . . We decline to doxtend *Stern*'s limited holding herein.") (citing *Stern v. Marshall*, 564 U.S. at 475, 503).

consented implicitly to adjudication of this dispute by this Court.[13] None of these parties have ever objected to this Court's constitutional authority to enter a final judgment. These circumstances unquestionably constitute implied consent.[14] Thus, this Court wields the constitutional authority to enter a final judgment here.

### IV.   ANALYSIS

#### A.  Joint Stipulation of Facts

As a preliminary matter, Plaintiff and Defendants have stipulated to the following facts[15]:

1. On March 17, 2022, Ms. Castillo, on behalf of Castle Enterprises, LLC ("*Castle*"), applied for financing via an application with a third-party vendor ("*Application for Funding*").[16]

2. Pursuant to the Application for Funding, Ms. Castillo is the 100% owner of Castle.[17]

3. Pursuant to filings with the Texas Secretary of State, Mr. Castillo is/was the managing member of Castle.[18]

4. Defendants are insiders of Castle pursuant to 11 U.S.C. § 101(31)(A).[19]

5. On March 28, 2022, Plaintiff, Castle, and Defendants, as guarantors, entered into: (a) Forward Purchase Agreement (Fixed ACH Delivery), Authorized Sub-Servicing Agreement, Sale Terms and Conditions, Security Agreement, Personal Guaranty, Agreement to Arbitrate (collectively, the "*Purchase Agreement*"); and (b) Representations and Acknowledgements ("*R&As*" and together with the Purchase Agreement, the "*Agreement*").[20]

6. The Agreement provides that the Agreement is governed by Virginia law.[21]

7. Ms. Castillo signed the R&As.[22]

---

[13] *Wellness Int'l Network, Ltd.*, 135 S. Ct. at 1947 ("Sharif contends that to the extent litigants may validly consent to adjudication by a bankruptcy court, such consent must be expressed. We disagree. Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be express. Nor does the relevant statute, 28 U.S.C. § 157, mandate express consent . . . .").

[14] *See id.*

[15] Dkt. No. 35.

[16] *Id.* at 5; Dkt. 38-1.

[17] Dkt. 38-1; Dkt. No. 35, at 5.

[18] Dkt. No. 35, at 5.

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.*

8. Mr. Castillo signed the Agreement on behalf of Castle and as a guarantor.[23]

9. Ms. Castillo signed the Agreement both on behalf of Castle and as a guarantor.[24]

10. Ms. Castillo made numerous written representations to Plaintiff on behalf of Castle and as a guarantor.[25]

11. By entering the Purchase Agreement, both Defendants made the following written representations, warranties, and covenants to Plaintiff, among others:

   a. Representations that Castle was solvent.[26]

   b. Representations regarding the financial condition of Castle and Defendant, individually, including an affirmative obligation to inform Plaintiff of any material adverse changes in the financial condition or operations of Castle.[27]

   c. Representations that Castle would not prevent payment of Plaintiff's debits, permit diversion of the Castle's receipts, or engage in actions that had an adverse effect upon Seller/Castle's obligations under the Agreement.[28]

   d. Representations that Castle would not enter into any arrangement, agreement or commitment for any additional financing, whether in the form of a purchase and sale of receivables, the sale of accounts receivable, or a loan (whether secured or unsecured) with any party other than Plaintiff without Plaintiff's written consent.[29]

12. Under the Purchase Agreement, Plaintiff agreed to pay Castle $400,000, minus $10,000 in origination fees, for a total of $390,000 (the *"Net Purchase Price"*), in exchange for the right to all of Castle's accounts, receipts, contract rights, and other rights to payment arising from or relating to the payment to Castle through cash, checks, electronic transfers, ACH transfers, credit cards, charge cards, debit cards, prepaid cards, mobile payments (including Apple Pay and other ACH payments) and other similar payment methods that may accrue to Castle in the ordinary course of Castle's business (collectively, the *"Receipts"*) until Castle paid $568,000.00 (the *"Receipts Purchased Amount"*) to Plaintiff in full.[30]

13. On March 28, 2022, Plaintiff transferred the Net Purchase Price to Castle.[31]

14. The Purchase Agreement entitled Plaintiff to collect a weekly amount of $5,466.00 (the *"Specified Amount"*) or in a variable amount equal to 3.0% (the *"Specified Percentage"*)

---

[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] Dkt. No. 35, at 6.
[27] *Id.*; Dkt. No. 38-3, at 7.
[28] Dkt. No. 35, at 6; Dkt. No. 38-3, at 7.
[29] Dkt. No. 35, at 6; Dkt. No. 38-3, at 7.
[30] Dkt. No. 35, at 7.
[31] Dkt. No. 35, at 6.

from Castle's bank account until such time as Plaintiff received payment in full of the Receipts Purchased Amount.[32] Castle's bank account is with Plains Capital Bank, and the last four digits of the account are 5103 (the "*Castle Account*").[33] The Defendants' personal bank account is a Plains Capital Bank account ending in the four digits 5301 (the "*Personal Account*").[34]

15. In the event of a breach of the Agreement, the Specified Percentage increases to 100% and the unpaid balance of the Receipts Purchased Amount becomes immediately payable.[35]

16. To allow Plaintiff to collect its Receipts Purchased Amount, the Purchase Agreement requires Castle to use only one bank account to deposit all Receipts collected by Castle, which was designated by the parties in the Purchase Agreement and fully accessible to Plaintiff.[36]

17. The Purchase Agreement prohibits Castle from (i) changing the account designated for the delivery of Receipts; (ii) setting up multiple accounts into which any of the Castle's receipts are deposited or otherwise transferred; (iii) blocking or stopping payment on Plaintiff's debit; (iv) permitting any event to occur that could cause diversion of any of Castle's receipts; (v) or taking any other action that could have any adverse effect upon Castle's obligations under the Agreement.[37]

18. The Purchase Agreement lists a number of "Events of Default," including "(e) any debit is rejected or returned due to insufficient funds and Seller [Castle] fails to respond to . . . inquiries or to contact Purchaser within five (5) business days."[38] The Purchase Agreement grants Plaintiff a blanket lien on Castle's assets, including but not limited to: all accounts, accounts receivable, contracts, real property leases, notes, bills, acceptances, chose in action, chattel paper, instruments, inventory, goods, equipment, supplies, furniture, cash, and general intangibles.[39]

19. Plaintiff's lien was perfected by its previously filed Uniform Commercial Code financing statement as to Castle on file with the secretary of state for the State of Texas (the "*Kapitus UCC-1*").[40]

20. Approximately seventy-nine (79) days after entering into the Purchase Agreement, Castle's June 14, 2022, payment to Plaintiff did not clear and was returned to Plaintiff due to insufficient funds.[41]

---

[32] *Id.*
[33] *See* Audio Tr. Transcript, April 1, 2026, at 10:19-10:20 am.
[34] Audio Tr. Transcript, March 31, 2026, at 4:31-4:32 pm.
[35] *Id.*
[36] *Id.*
[37] *Id.*
[38] *Id.*
[39] Dkt. No. 35, at 8.
[40] *Id.*
[41] *Id.*

21. In total, Defendants, on behalf of Castle and as guarantors, made thirteen (13) payments to Plaintiff: (i) ten (10) payments between April 6, 2022, and June 8, 2022, for a total of $54,660; (ii) two (2) payments on July 6, 2022, totaling $16,398; and (iii) one (1) payment on August 12, 2022, in the amount of $2,733.00.[42]

22. On May 27, 2022, Castle, via Ms. Castillo, entered into a "Castle Cash Advance Agreement" with Unique Funding Solutions, LLC ("*Unique Funding*") for the sale of Castle's future receipts/receivables.[43]

23. On June 19, 2023, Castle and Ms. Castillo were sued by Unique Funding.[44]

24. On September 6, 2022, Castle and Defendants were sued by Billd Exchange, LLC ("*Billd Exchange*").[45]

25. In its lawsuit, Billd Exchange, LLC, sought at least $1,056,418.85 from both Castle and Defendants, individually.[46]

26. Plaintiff is a secured creditor of Castle.[47]

27. Plaintiff is an unsecured creditor of Defendants.[48]

28. On February 26, 2024, Defendants filed a "Voluntary Petition for Bankruptcy Under Chapter 7" of the Bankruptcy Code.[49]

29. Castle is listed as a "codebtor" of Defendants on the "Voluntary Petition for Bankruptcy Under Chapter 7."[50]

30. Plaintiff's claim against Defendants, including post-petition interest at the contractual rate as well as additional costs, attorney's fees, and expenses is $710,241.07 (the "*Debt*"), as of October 3, 2025.[51] Per the Complaint, the $710,241.07 is comprised of a contractual balance of $496,974.00, plus $84,417.32 in interest at a 10% rate covering the period of 6/17/2022 to 2/26/2024 (including a $136.16 per diem), $125,164.75 in attorney's fees, $2,500 in default fees, and $1,185 in ACH fees.[52]

## B.  Evidentiary Standard

---

[42] *Id.*
[43] *Id.*
[44] *Id.*
[45] Dkt. No. 35, at 9.
[46] *Id.*
[47] *Id.*
[48] *Id.*
[49] *Id.*
[50] *Id.*
[51] *Id.*
[52] Dkt. 1, at 3, n.2.

Plaintiff must prove by a preponderance of the evidence that the Debt is non-dischargeable under 11 U.S.C. § 523. The United States Supreme Court held in *Grogan v. Garner* that the standard of proof for dischargeability under 11 U.S.C. § 523 is the ordinary preponderance-of-the-evidence standard.[53] The Court reasoned that Congress intended this standard to apply uniformly to all exceptions listed in § 523(a), because there is no indication in the statute that different exceptions require different burdens of proof.[54]

### C. Plaintiff's Complaint

In its Complaint, Plaintiff alleges the following causes of action, to wit: (1) Count I – non-dischargeability of debt under 11 U.S.C. § 523(a)(2)(a) for false pretenses, false representations, and actual fraud (as to both Defendants); (2) Count II – non-dischargeability of debt under 11 U.S.C. § 523(a)(2)(b) for use of a statement in writing that is materially false respecting the debtor's or an insider's financial condition (as to both Defendants); (3) Count III – non-dischargeability of debt under 11 U.S.C. § 523(a)(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny (as to both Defendants); (4) Count IV – non-dischargeability of debt under 11 U.S.C. § 523(a)(6) for willful and malicious injury by the debtors (as to both Defendants); and (5) attorney's fees and costs.[55]

### D. Bankruptcy Rule 7052 Motion for Judgment on Partial Findings

On April 1, 2026, this Court held a trial and after Plaintiff presented its case in chief and rested, Defendants moved for judgment on all four Counts under Bankruptcy Rule 7052, which incorporates Rule 52(c).[56] Under Rule 52(c), if a party rests their case-in-chief or has been fully heard on an issue in a non-jury trial, and "the court finds against the party on that issue, the court

---

[53] *Grogan v. Garner*, 498 U.S. 279, 291 (1991).
[54] *Id.* at 287.
[55] Dkt. No. 1, at 24–36.
[56] *See* Audio Tr. Transcript, April 1, 2026, at 3:37 pm.

may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue."[57] Judgment entered under Rule 52(c) is made after the trial court has heard all of the "evidence bearing on crucial issues of fact."[58] The Court will next consider each Count in turn.

1. **Count I: Non-dischargeability of debt under 11 U.S.C. § 523(a)(2)(A) for false pretenses, false representations, and actual fraud (as to both Defendants)**

In Count I, Plaintiffs allege that Defendants obtained the Debt by false pretenses, false representations, and/or actual fraud within the meaning of 11 U.S.C. § 523(a)(2)(A).[59] Section 523(a)(2)(A) provides that:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt attempted in any manner to evade or defeat such tax;
>
> > (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
> >
> > > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.[60]

The Supreme Court has distinguished between "false pretenses and representations" and "actual fraud," and recognized two distinct paths for non-dischargeability under § 523(a)(2)(A).[61]

**A. False Representations and False Pretenses**

For a debtor's representation to be a false representation or false pretense, "it must have been: (1) a knowing and fraudulent falsehood, (2) describing past or current facts, (3) that was relied upon by the other party."[62] "A debtor's subjective intent may be inferred by examining the

---

[57] Fed. R. Civ. P. 52(c).

[58] *Samson v. Apollo Res., Inc.*, 242 F.3d 629, 632 (5th Cir. 2001).

[59] Dkt. No. 1, at 24–27.

[60] 11 U.S.C. § 523(a)(2)(A).

[61] *See In re Burg*, 641 B.R. 120, 134 (Bankr. S.D. Tex. 2022) (citing *Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1586 (2016).

[62] *Id.*

totality of the circumstances because it most commonly cannot be established by direct evidence."[63] To determine the dischargeability of a debt under § 523(a) in an adversary proceeding, the plaintiff bears the burden of proving the elements by a preponderance of the evidence.[64]

### i. Knowing and fraudulent falsehood

The first element that the plaintiff must prove to make a debt non-dischargeable under a § 523(a)(2)(A) false pretenses and representations theory is that the defendant made a knowing and fraudulent falsehood.[65] Whether a knowing and fraudulent falsehood has been made depends on the subjective mindset of the promisor[66]:

> A misrepresentation is fraudulent if the maker . . . knows or believes . . . the matter is not as represented, or does not have the confidence in the accuracy of his representation as stated or implied, or knows . . . he does not have the basis for his representation as stated or implied.[67]

One example of a false representation under § 523(a)(2)(A) is if a debtor misrepresents his or her intention to perform contractual duties.[68] Fraudulent intent can be inferred from a debtor's acts after the representation was made, such as breach of promise to perform combined with "slight circumstantial evidence" of fraud.[69] A breach of contract soon after signing the contract can be circumstantial evidence of an intent not to fulfill the contract.[70]

Here, Defendants represented in the Agreement that Defendants would maintain enough money in the Castle Account to make their minimum weekly payments.[71] But Mr. Castillo admitted on the record that on multiple occasions he transferred Castle's income out of the Castle

---

[63] *Id.*

[64] *See Grogan*, 498 U.S. at 291.

[65] *In re Burg*, 641 B.R. at 134.

[66] *Id.*

[67] *Id.* (quoting *AT&T Card Servs. v. Mercer (In re Mercer)*, 246 F.3d 391, 407 (5th Cir. 2001)).

[68] *Id.* at 135; *Nat'l Diversity Council v. Carter (In re Carter)*, Nos. 17-35082, 17-03446, 2018 WL 6060391, at *23 (Bankr. S.D. Tex. 2018).

[69] *In re Carter*, No. 17-35082, 2018 WL 6060391, at *23–24 (Bankr. S.D. Tex. Nov. 19, 2018).

[70] *See In re Tegeler*, 586 B.R. 598, 638 (Bankr. S.D. Tex. 2018).

[71] Dkt. No. 38-3, at 2, 7.

Account to Defendants' Personal Account before Plaintiff could withdraw it from the Castle Account.[72] Mr. Castillo also admitted to commingling Castle's income with Defendants' own money by transferring Castle's income to Defendants' Personal Account.[73] This transferring of funds caused Defendants to default on the Agreement only seventy-nine (79) days after Defendants signed the Agreement.[74] Because Mr. Castillo transferred money out of the Castle Account and commingled it with personal funds so soon after signing the Agreement, this short time period is circumstantial evidence showing that Defendants never intended to uphold their promise to maintain enough money in the Castle Account for Plaintiff to withdraw.[75] Thus, under § 523(a)(2)(A), Defendants' agreement to maintain enough money in the Castle Account to make their minimum weekly payments was a knowing falsehood.

Plaintiff also argues that Defendants breached the Agreement by entering a subsequent funding agreement with a third party, Unique Funding.[76] Mr. Castillo admitted on the record that only sixty (60) days after signing the Agreement, Castle entered into a Merchant Cash Advance ("*MCA*") agreement with Unique Funding.[77] The Unique Funding MCA was signed by Ms. Castillo, on May 27, 2022.[78] Because Ms. Castillo signed the MCA so quickly after signing the Agreement with Plaintiff, this short time period is circumstantial evidence showing that Defendants never intended to uphold their promise not to sign a subsequent funding agreement.[79] Thus, under § 523(a)(2)(A), Defendants' promise not to enter any subsequent funding agreements without Plaintiff's written consent was a knowing falsehood.

---

[72] Audio Tr. Transcript, April 1, 2026.
[73] Audio Tr. Transcript, April 1, 2026.
[74] *See* Audio Tr. Transcript, April 1, 2026.
[75] *See In re Burg*, 641 B.R. at 135; *see also In re Carter*, 2018 WL 6060391, at *23.
[76] Dkt. No. 38-3, at 8-9.
[77] *See* Audio Tr. Transcript, April 1, 2026.
[78] Dkt. No. 38-33.
[79] *See In re Burg*, 641 B.R. at 135; *see also In re Carter*, 2018 WL 6060391, at *23.

### ii. Statements that falsely depict current or past facts

The second element of non-dischargeability under a § 523(a)(2)(A) false pretenses and representations theory is that the false representation must include statements that falsely depict current or past facts.[80] The Fifth Circuit has held that misrepresentations concerning a current fact of the debtor's future intention will satisfy this element.[81]

Here, Defendants defaulted on payments only seventy-nine (79) days after signing the Agreement.[82] Defendants also signed a subsequent MCA agreement with a third party, Unique Funding, only sixty (60) days after signing the Agreement.[83] Considering the short amount of time it took Defendants to renege on their promises to both make weekly minimum payments and to refrain from signing a subsequent funding agreement without Plaintiff's written consent, it can be inferred that when Defendants signed the Agreement they made misrepresentations about whether they intended to perform under the Agreement.[84] Thus, under § 523(a)(2)(A), Defendants' representations that they would maintain enough money in the Castle account and would not sign a subsequent funding agreement were false representations of their future intentions.

### iii. Whether Plaintiff relied on Defendant's misrepresentations

The third element for non-dischargeability under the false pretenses and representations theory of § 523(a)(2)(A) is whether the plaintiff relied on a debtor's misrepresentation.[85] While the reliance need not be reasonable, it must be justifiable.[86] Although justifiability is a looser standard than reasonableness, the Supreme Court has clarified that it is not without limits: "[a

---

[80] *In re Burg*, 641 B.R. at 136.
[81] *Allison v. Roberts (In re Allison)*, 960 F.2d 481, 483–84 (5th Cir. 1992).
[82] Dkt. No. 35, at 8.
[83] *Id.*
[84] *See In re Burg*, 641 B.R. at 135; *see also In re Carter*, 2018 WL 6060391, at *23.
[85] *In re Burg*, 641 B.R. at 137.
[86] *In re Jacobson*, No. 06-51460, 2007 WL 2141961, at *2 (5th Cir. July 26, 2007) (citing *Field v. Mans*, 516 U.S. 59, 71 (1995)).

person] cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation."[87]

Justifiable reliance requires that "the existence of the intention is material and the recipient has reason to believe that it will be carried out."[88] A investigation by a plaintiff into the truth of a debtor's representations is not required unless the falsehood is "readily apparent or obvious or there are 'red flags' indicating such reliance is unwarranted."[89]

Here, Defendants represented in the Agreement that Defendants would maintain enough money in the Castle Account to make their minimum weekly payments and would not enter subsequent funding agreements.[90] Plaintiff testified that it investigated Castle's financial health by reviewing Castle's bank statements for the year prior to the Agreement's execution and by interviewing the Defendants.[91] Plaintiff also testified that there were no red flags in Castle's financial records, and Castle appeared to be a financially healthy company.[92] Therefore, under § 523(a)(2)(A), because Defendants represented they would make their weekly payments and would not enter subsequent funding agreements, and because Plaintiff investigated Castle's financial health and found no readily apparent issues, Plaintiff's reliance on Defendants' misrepresentations was justifiable.

Thus, under § 523(a)(2)(A), Plaintiff has proven by a preponderance of the evidence that because both Mr. Castillo and Ms. Castillo's written statements that they would make their minimum weekly payments and would not sign a subsequent funding agreement were made with the Defendants' knowledge that the statements were false, and because the statements were false

---

[87] *Fields*, 516 U.S. at 71.
[88] *In re Mercer*, 246 F.3d 391, 416 (5th Cir. 2001).
[89] *In re Carter*, 2018 WL 6060391, at *26.
[90] Dkt. No. 38-3, at 2, 7.
[91] *See In re Carter*, 2018 WL 6060391, at *26; Audio Tr. Transcript, April 1, 2026.
[92] Audio Tr. Transcript, April 1, 2026.

representations of the Defendants' future intentions and were justifiably relied on by Plaintiff, the Debt is nondischargeable as to both Debtors.

## B. Actual Fraud

To prevail on an actual fraud claim under § 523(a)(2)(A), Plaintiff must demonstrate that: (i) the debtor made representations; (ii) at the time the representations were made the debtor knew they were false; (iii) the debtor made the representations with the intention and purpose to deceive the creditor; (iv) the creditor relied on such representations; and (v) the creditor sustained losses as a proximate result of the representations.[93] Although the Court is mindful that for actual fraud, a false representation is not always a required element,[94] the Court finds it appropriate to consider whether false misrepresentations occurred here given that Plaintiff alleges in Count I that Defendants made false representations.[95]

### i. Whether Debtors knowingly made false representations with intent to deceive

First, "'[a] misrepresentation is fraudulent if the maker . . . knows or believes . . . the matter is not as' represented, or 'does not have the confidence in the accuracy of his representation' as stated or implied, or 'knows . . . he does not have the basis for his representation' as stated or implied."[96] When considering whether a knowing and fraudulent representation was made, courts look to the subjective mindset of the defendant.[97] "A representation of the maker's own intention to do . . . a particular thing is fraudulent if he does not have that intention."[98] "Courts recognize that circumstantial evidence may be used to establish the debtor's subjective intent as it most

---

[93] *In re Bortz*, No. 22-33772, 2025 WL 1428161, at *10 (Bankr. S.D. Tex. May 16, 2025).
[94] *Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1586 (2016).
[95] Dkt. 1, at 24–27.
[96] *In re Bortz*, 2025 WL 1428161, at *10 (quoting *In re Mercer*, 246 F.3d 391, 407 (5th Cir. 2001)).
[97] *Id.*
[98] *Id.* (quoting *In re Mercer*, 246 F.3d at 407).

commonly cannot be proven by direct evidence."[99] "Reckless indifference to the truth can be sufficient to establish intent to deceive under § 523(a)(2)(A)."[100]

Here, Defendants represented in the Agreement that they would maintain enough money in the Castle Account to meet their weekly minimum payments.[101] But shortly after signing the Agreement, Mr. Castillo transferred Castle's income to Defendant's Personal Account and commingled it with the Defendants' own money.[102] As a result, Castle defaulted on its payments only seventy-nine (79) days after Defendants signing the Agreement.[103] The fact that Castle defaulted so quickly after Defendants signing the Agreement is circumstantial evidence showing that Defendants intended to deceive Plaintiff when Defendants falsely represented that they would keep enough money in the Castle Account to pay Plaintiff.[104] Thus, under § 523(a)(2)(A), Defendants knew their representation in the Agreement that they would keep enough money in the Castle Account to make their minimum weekly payments was false and Defendants made the representation with the intent to deceive Plaintiff.

Defendants also represented in the Agreement that they would not sign any subsequent funding agreements without Plaintiff's consent, yet Ms. Castillo signed a subsequent MCA on behalf of Castle only sixty (60) days after signing the Agreement.[105] Because Ms. Castillo signed the subsequent MCA only sixty (60) days after signing the Agreement with Plaintiff, this short period is circumstantial evidence showing Defendants intended to deceive Plaintiff when Defendants falsely represented they would not sign another MCA agreement.[106] Thus, under §

---

[99] *Id.*
[100] *Id.*
[101] Dkt. No. 38-3, at 2.
[102] Audio Tr. Transcript, April 1, 2026; Dkt. No. 35, at 8.
[103] Audio Tr. Transcript, April 1, 2026; Dkt. No. 35, at 8.
[104] *See In re Burg*, 641 B.R. at 135; *see also In re Carter*, 2018 WL 6060391, at *23.
[105] Dkt. No. 38-3, at 7.
[106] *See In re Burg*, 641 B.R. at 135; *see also In re Carter*, 2018 WL 6060391, at *23.

523(a)(2)(A), Defendants knew that their representation in the Agreement that they would not sign another MCA without Plaintiff's written consent was false and Defendants made the representation with the intent to deceive Plaintiff.

### ii. Actual and justifiable reliance

Second, actual fraud requires that the plaintiff show actual and justifiable reliance.[107] Actual reliance, which is equivalent to causation-in-fact, requires a showing that the plaintiff's reliance was "a substantial factor in determining the course of conduct that results in his loss."[108] The standard for actual reliance is a low bar: the plaintiff must merely prove that the plaintiff "in fact relied upon the representations of the debtor."[109]

Justifiable reliance requires that "the existence of the intention is material and the recipient has reason to believe that it will be carried out."[110] Justifiable reliance requires a reasonable reliance but is a subjective standard that is more relaxed than the objective reasonable reliance standard.[111] A investigation by a plaintiff into the truth of a debtor's representations is not required unless the falsehood is "readily apparent or obvious or there are 'red flags' indicating such reliance is unwarranted."[112]

Here, Defendants represented in the Agreement that Defendants would maintain enough money in the Castle Account to make their minimum weekly payments and would not enter subsequent funding agreements.[113] Plaintiff testified that it investigated Castle's financial health by reviewing Castle's bank statements for the year prior to the Agreement's execution and by

---

[107] *In re Bortz*, 2025 WL 1428161, at *11.
[108] *Id.* (quoting *In re Mercer*, 246 F.3d at 413).
[109] *Id.* (quoting *In re Mercer*, 246 F.3d at 413).
[110] *Id.* at 12 (quoting *In re Mercer*, 246 F.3d at 416).
[111] *Id.*
[112] *Id.* (quoting *In re Hurst*, 337 B.R. 125, 133–34 (Bankr. N.D. Tex. 2005)).
[113] Dkt. No. 38-3, at 2, 7.

interviewing the Defendants.[114] Plaintiff testified that there were no red flags in Castle's financial records, and Castle appeared to be a financially healthy company.[115] Therefore, under § 523(a)(2)(A), because Defendants represented they would make their weekly payments and would not enter subsequent funding agreements, and because Plaintiff investigated Castle's financial health and found no readily apparent issues, Plaintiff's reliance on Defendants' representations was actual and justifiable.

### iii. Whether Defendants' misrepresentation was the proximate cause of Plaintiff's loss

Third, § 523(a)(2)(A) requires that the defendant's misrepresentations be the proximate cause of the plaintiff's loss.[116] This requires a showing that the misrepresentations were the "proximate cause of the injury—i.e., they foreseeably could have produced the injury that the Plaintiff suffered."[117]

Here, Plaintiff alleges that Defendants agreed to maintain enough money in the Castle Account to make their weekly minimum payments and agreed not to sign a subsequent funding agreement without Plaintiff's written consent.[118] Plaintiff claims that it relied on these statements when it entered the Agreement and transferred the Net Purchase Price to Defendants.[119] But on June 14, 2022, a mere seventy-nine (79) days after signing the Agreement, Castle defaulted on the payments.[120] Thus, Plaintiff's reliance on Defendants' misrepresentation was the proximate cause of Plaintiff's injury, because Plaintiff transferred the Net Purchase Price in reliance on Defendants' promise to repay, and then Plaintiff was unable to recover the money when Defendant defaulted.

---

[114] *See In re Carter*, 2018 WL 6060391, at *26; Audio Tr. Transcript, April 1, 2026.
[115] Audio Tr. Transcript, April 1, 2026.
[116] *In re Bortz*, 2025 WL 1428161, at *12.
[117] *Id.* (quoting *In re Rifai*, 604 B.R. 277, 321 (Bankr. S.D. Tex. 2019)).
[118] Dkt. No. 38-3, at 2, 7.
[119] Dkt. No. 1, at 25–27.
[120] Dkt. No. 35, at 8.

Therefore, under § 523(a)(2)(A), Defendants' misrepresentation that they would make the minimum weekly payments was the proximate cause of Plaintiff's injury.

Thus, under § 523(a)(2)(A), Plaintiff has proven by a preponderance of the evidence that because both Mr. Castillo and Ms. Castillo's written statements that they would keep enough money in the Castle Account to cover the minimum weekly payments and would not sign a subsequent funding agreement were made with the Defendants' knowledge that the statements were false, were justifiably relied on by Plaintiff, and were the proximate cause of Plaintiff's injury, the Debt is non-dischargeable as to both Defendants.

2. **Count II: non-dischargeability of debt under 11 U.S.C. § 523(a)(2)(B) for use of a statement in writing that is materially false respecting the debtor's or an insider's financial condition (as to both Defendants)**

Pursuant to 11 U.S.C § 523 – Exceptions to Discharge:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt –

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

> > (B) use of a statement in writing –

> > > (i) that is materially false;
> > > (ii) respecting the debtor's or an insider's financial condition;
> > > (iii) on which the creditor to whom the debtor is liable for such money, property, services or credit reasonably relied; and
> > > (iv) that the debtor caused to be made or published with intent to deceive . . . .[121]

The Court will consider whether Plaintiff has met its burden of proving each element of § 523(a)(2)(B) by a preponderance of the evidence.[122]

---

[121] 11 U.S.C § 523(a)(2)(B).
[122] *Grogan*, 498 U.S. at 291.

**A. Use of a statement in writing respecting the debtor's or an insider's financial condition**

A statement respecting the debtor or an insider of a debtor's financial condition must be in writing to make a debt non-dischargeable under § 523(a)(2)(B).[123] An "insider" includes— (A) if the debtor is an individual . . . (iv) [a] corporation of which the debtor is a director, officer, or person in control.[124]

"The debtor must have written, signed, or adopted the writing."[125] Written statements evidencing a debtor's financial condition may include "balance sheets, income statements, statements of changes in overall financial position, or income and debt statements that present the debtor or insider's net worth, overall financial health, or equation of assets and liabilities."[126]

"Statements falling within section 523(a)(2)(B) must do more than simply prompt speculation about the debtor's finances; rather, they must be 'sufficient to determine financial responsibility.'"[127] Furthermore, "statements of income and expenses or schedules of assets and liabilities" will qualify.[128] But, "transactional documents that merely imply some financial status do not qualify as statements regarding the debtor's financial condition."[129]

Section 523(a)(2)(B)(i) also requires that the written statement the plaintiff relied upon to incur the debt be materially false.[130] A materially false financial statement is one which "paints a substantially untruthful picture of a financial condition by misrepresenting information of the type

---

[123] *See* 11 U.S.C. § 523(a)(2)(B).
[124] 11 U.S.C. § 101(31).
[125] *In re Hosseini*, No. 18-20177, 2021 WL 1961921, at *8 (Bankr. S.D. Tex. May 14, 2021).
[126] *Heritage Bank v. McCracken (In re McCracken)*, 586 B.R. 247, 255 (Bankr. S.D. Tex. 2018). *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 721 (2018) (holding that the phrase "[a] statement respecting the debtor's financial condition" in 11 U.S.C. § 523(a)(2)(A) "encompass[es] statements addressing just one or some of a debtor's assets or liabilities").
[127] *In re Janney*, 557 B.R. 476, 481–82 (Bankr. M.D. La. 2016) (quoting *In re Price*, 123 B.R. 42, 45 (Bankr. N.D. Ill. 1991)).
[128] *Id.* at 482 (quoting *In re Price*, 123 B.R. 42, 45 (Bankr. N.D. Ill. 1991)).
[129] *Id.*
[130] 11 U.S.C. § 523(a)(2)(B)(i).

which would normally affect the decision to grant credit."[131] "[M]ateriality should be judged by comparing the debtor's actual financial condition with the picture debtor paints of it."[132] "To be shown as 'materially false,' the document must not only be erroneous, but also contain information causing the document to be substantially inaccurate."[133] A false statement about a single asset can be a materially false "statement respecting the debtor's financial condition."[134]

Here, Ms. Castillo is the 100% owner of Castle, which is a corporation.[135] Ms. Castillo therefore has control of Castle, and so Castle qualifies as an "insider" of the Debtors.[136]

Plaintiff alleges that Defendants submitted false written financial records in support of the insider Castle's Application for Funding and misrepresented in the Agreement that Defendants would maintain enough money in the Castle Account to make the minimum weekly payments and would not sign a subsequent funding agreement without Plaintiff's written consent.[137] While Defendants did submit twelve months of Castle's bank records in support of the Application for Funding,[138] Plaintiff failed to present any evidence indicating that those records were falsified in any way. Defendants' representation in the Agreement regarding maintaining money in the Castle Account is not a statement regarding Castle's financial condition because it is merely a promise to repay and it does not contain information about Castle's financial condition.[139] Likewise, Defendants' representation that they would not sign a subsequent funding agreement is merely a

---

[131] *In re McCracken*, 586 B.R. at 256.
[132] *In re Nance*, 70 B.R. 318, 321 (Bankr. N.D. Tex. 1987).
[133] *First Nat'l Bank of Byers, N.A. v. Slonaker (In re Slonaker)*, 269 B.R. 595, 602–03 (Bankr. N.D. Tex. 2001).
[134] *Appling*, 584 U.S. at 712.
[135] Dkt. No. 35, at 5.
[136] *See* 11 U.S.C. § 101(31).
[137] Dkt. 1, at 27–30; Dkt. No. 38-3, at 2, 7.
[138] Dkt. No. 38-9, 38-10, 38-11, 38-12, 38-13, 38-14, 38-15, 38-16, 38-17.
[139] *In re Janney*, 557 B.R. at 482 ("[T]ransactional documents that merely imply some financial status do not qualify as statements regarding the debtor's financial condition."); *see also, e.g.*, *In re Segal*, 195 B.R. 325, 332 (Bankr. E.D. Pa. 1996) (lease and promissory note were not statements regarding the debtor's financial condition); *In re Oakley*, 503 B.R. 407, 430 (Bankr. E.D. Pa. 2013) ("A promissory note, which contains terms and conditions regarding repayment, is not a statement respecting the payee's financial condition.").

promise to refrain from entering another funding agreement and does not contain any information about Castle's financial condition.[140] Therefore, under § 523(a)(2)(B), Castle's bank records that were submitted with the Application for Funding and Defendants' written representations in the Agreement that they would make the minimum weekly payments and would not sign a subsequent funding agreement are not statements regarding the insider Castle's financial condition.

Thus, Plaintiff has failed to prove by a preponderance of the evidence that Defendants made materially false written statements regarding the insider Castle's financial condition, and so § 523(a)(2)(B) does not except from discharge the Debt owed by Defendants to Plaintiff.

3. **Count III: non-dischargeability of debt under 11 U.S.C. § 523(a)(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny (as to both Defendants)**

Plaintiff argues that under 11 U.S.C. § 523(a)(4) the Debt is nondischargeable "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."[141] But at trial, after Plaintiffs presented their case in chief and rested, Defendants brought a Bankruptcy Rule 7052 motion for judgment on partial findings, and the Court dismissed Count III for reasons stated on the record.[142] Thus, the Court will not analyze Count III here.

4. **Count IV: non-dischargeability of debt under 11 U.S.C. § 523(a)(6) for willful and malicious injury by the debtors (as to both Defendants)**

Plaintiff argues that under 11 U.S.C. § 523(a)(6), Defendants' debt should be nondischargeable for committing a willful and malicious injury.[143] The Supreme Court answered the "pivotal question" of whether § 523(a)(6) covers "acts, done intentionally, that cause injury . . . or only acts done with the actual intent to cause injury."[144] The Supreme Court's conclusion was

---

[140] *See In re Janney*, 557 B.R. at 482.
[141] Dkt. No. 1, at 30.
[142] Audio Tr. Transcript, April 1, 2026.
[143] Dkt. No. 1, at 34–36.
[144] *Matter of Miller*, 156 F.3d 598, 604 (5th Cir. 1998) (citing *Kawaauhau v. Geiger*, 118 S. Ct. 974, 977 (1998)).

that "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that non-dischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury."[145] Furthermore, the Fifth Circuit held that an injury is both willful and malicious if the debtor intentionally took action that necessarily caused, or was substantially certain to cause, the injury.[146] Plaintiff must prove non-dischargeability of the debt under § 523(a)(6) by a preponderance of the evidence.[147]

Here, in the Agreement, Plaintiff agreed to pay the Net Purchase Price to Castle and in return Defendants agreed to deposit Castle's business income exclusively into the Castle Account and allow Plaintiff to withdraw the minimum weekly payments.[148] But Mr. Castillo admitted on the record that he often transferred Castle's income from the Castle Account to his Personal Account before Plaintiff could access it.[149] Mr. Castillo also admitted to commingling Castle's income with Defendants' own money by transferring Castle's income to Defendants' Personal Account.[150] This transferring of funds led to Defendants defaulting on the Agreement only seventy-nine (79) days after signing the Agreement.[151] Mr. Castillo further testified that he was aware that transferring Castle's income to the Personal Account meant that Plaintiff would not be able to access it.[152] Therefore, Mr. Castillo committed acts—the transferring of money to the Personal Account on multiple occasions—that were substantially certain to injure Plaintiff because Plaintiff was unable to access Castle's income.[153] Thus, under § 523(a)(6), Mr. Castillo's transferring of the funds was willful and malicious.

---

[145] *Kawaauhau*, 118 S. Ct. at 977.
[146] *Matter of Miller*, 156 F.3d at 606.
[147] *See Grogan*, 498 U.S. at 291.
[148] Dkt. No. 38-3, at 1-3.
[149] Audio Tr. Transcript, April 1, 2026.
[150] Audio Tr. Transcript, April 1, 2026.
[151] *See* Audio Tr. Transcript, April 1, 2026.
[152] Audio Tr. Transcript, April 1, 2026.
[153] *Matter of Miller*, 156 F.3d at 606.

Defendant also agreed not to sign a subsequent funding agreement without Plaintiff's written consent.[154] Yet only sixty (60) days after signing the Agreement, Ms. Castillo signed a subsequent MCA agreement with Unique Funding on behalf of Castle.[155] Signing the subsequent MCA was substantially certain to injure Plaintiff because Castle agreed to allow Unique Funding to withdraw funds from the Castle Account, which would reduce the amount of available money for Plaintiff to withdraw.[156] Unique Funding withdrew $15,642.86 from Castle's account both on June 1, 2022, and also on June 8, 2022, and Castle defaulted on Plaintiff's Agreement shortly thereafter on June 14, 2022.[157] Therefore, under § 523(a)(6), Ms. Castillo's entering into the agreement with Unique Funding was substantially certain to injure Plaintiff and was therefore willful and malicious.

Thus, under 11 U.S.C. § 523(a)(6), Plaintiff has shown by a preponderance of the evidence that both Mr. Castillo and Ms. Castillo committed acts that caused willful and malicious injury to Plaintiff, and so the Debt owed by Defendants to Plaintiff is nondischargeable as to both Debtors.

### 5. Attorney's Fees and Costs

Plaintiff has requested an award of attorney's fees.[158] "Rule 54(d)(2)(B)(ii) requires the movant to include in their motion the 'statute, rule, or other grounds' that entitles the movant to attorney's fees."[159] "In federal declaratory judgment proceedings, attorney's fees are granted only when the controlling substantive law permits recovery."[160] In the Fifth Circuit, courts apply the "American Rule," which mandates that each party "pay their own attorney's fees."[161] An exception

---

[154] Dkt. No. 38-3, at 7.
[155] Audio Tr. Transcript, April 1, 2026.
[156] *See* Dkt. No. 38-33; *see also* Dkt. No. 38-29, at 2, 4.
[157] Dkt. No. 38-29, at 2, 4.
[158] Dkt. No. 1, at 36; Dkt. No. 38-38.
[159] *In re Sedillo-Soto*, No. 24-31067, 2026 WL 700624, at *10 (Bankr. S.D. Tex. Mar. 11, 2026) (quoting *In re Cosas Claras, LP*, No. 10-50528-CAG, 2024 WL 3258801, at *3 (Bankr. W.D. Tex. July 1, 2024).
[160] *Id.*
[161] *Boland Marine & Mfg. Co. v. Rihner*, 41 F.3d 997, 1004 (5th Cir. 1995).

arises "when specific authority granted by statute or contract . . . states otherwise."[162] Creditors

can recover attorney's fees "if there is a contractual or statutory right to fees under state law."[163]

Furthermore, "a nondischargeable debt in a § 523(a)(2)(A) claim encompasses not only the debt

created by the fraud, but also an award of attorneys' fees, among other damages."[164]

Here, Plaintiff requests an award of attorney's fees in the amount of $125,164.75 and

requests that the Court declare the attorney's fees non-dischargeable.[165] According to the

Complaint, these are the contractual fees established by the Agreement.[166] The Agreement contains

the following provision:

> **3.3 Costs.** Seller shall pay to Purchaser all reasonable costs associated with (a) a breach by Seller of the Transaction Documents and the enforcement thereof, and (b) the enforcement of Purchaser's remedies set forth herein, including but not limited to (i) expenses, court costs and attorneys' fees of twenty-five percent (25%) of the total amount due to Purchaser or the actual attorney fees incurred, whichever is greater . . .[167]

Plaintiff claims a contractual balance of $496,974.00, plus $2,500 in default fees and

$1,185 in ACH fees for a total balance of $500,659.[168] The Agreement provides that Plaintiff is

owed 25% of the total balance if there is a breach of contract.[169] Twenty-five percent of $500,659

is $125,164.75, which is the amount Plaintiff claims in attorney's fees.[170] Thus, because attorney's

fees awarded by contract are an exception to the American Rule, $125,164.75 in contractual

attorney's fees are awarded to Plaintiff and must be paid by Defendants.[171] Furthermore, because

the contractual balance of $496,974.00 owed under the Agreement is nondischargeable under §

---

[162] *In re Sedillo-Soto*, 2026 WL 700624, at *10 (quoting *In re Cosas Claras, LP*, 2024 WL 3258801, at *11).
[163] *See In re Tegeler*, 586 B.R. 598, 705–12 (Bankr. S.D. Tex. 2018).
[164] *In re Rifai*, 604 B.R. 277, 334 (Bankr. S.D. Tex. 2019) (citing *Cohen v. De La Cruz*, 523 U.S. 213, 223 (1998)).
[165] Dkt. No. 1, at 3–4, n.2; Dkt. No. 36–37.
[166] *See* Dkt. No. 1, at 3–4, n.2.
[167] Dkt. No. 38-3, at 9.
[168] Dkt. No. 1, at 3–4, n.2.
[169] Dkt. No. 38-3, at 9.
[170] *See* Dkt. No. 1, at 3–4, n.2.
[171] *See In re Tegeler*, 586 B.R. 598, 705–12 (Bankr. S.D. Tex. 2018).

523(a)(2)(A) and § 523(a)(6) as explained *supra*,[172] the corresponding $125,164.75 in attorney's fees owed under the Agreement are also non-dischargeable under § 523(a)(2)(A) and § 523(a)(6).[173]

For the reasons stated herein, this Court holds that under (1) Count I – non-dischargeability of debt under 11 U.S.C. § 523(a)(2)(a) for false pretenses, false representations, and actual fraud (as to both Defendants), the pre-petition debt owed to Kapitus Servicing, Inc., as servicing agent for Kapitus LLC by the defendants Christopher Castillo and Linda Salazar Castillo is non-dischargeable; under (2) Count II – non-dischargeability of debt under 11 U.S.C. § 523(a)(2)(b) for use of a statement in writing that is materially false respecting the debtor's or an insider's financial condition (as to both Defendants), the pre-petition debt owed to Kapitus Servicing, Inc., as servicing agent for Kapitus LLC, by the defendants Christopher Castillo and Linda Salazar Castillo is dismissed; under (3) Count III – non-dischargeability of debt under 11 U.S.C. § 523(a)(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny (as to both Defendants), the pre-petition debt owed to Kapitus Servicing, Inc., as servicing agent for Kapitus LLC, by the defendants Christopher Castillo and Linda Salazar Castillo is dismissed; and under (4) Count IV – non-dischargeability of debt under 11 U.S.C. § 523(a)(6) for willful and malicious injury by the debtors (as to both Defendants), the pre-petition debt owed to Kapitus Servicing, Inc., as servicing agent for Kapitus LLC, by the defendants Christopher Castillo and Linda Salazar Castillo is non-dischargeable.

Accordingly, Kapitus Servicing, Inc., as servicing agent for Kapitus LLC, is granted judgment as against Christopher Castillo and Linda Salazar Castillo in the amount of $710,241.07 (comprised of the contractual balance of $496,974.00, plus $84,417.32 in interest at a 10% rate

---

[172] *See* Section IV.D.1.; Section IV.D.4.
[173] *In re Rifai*, 604 B.R. at 334 (citing *Cohen v. De La Cruz*, 523 U.S. at 223).

covering the period of 6/17/2022 to 2/26/2024 (including a $136.16 per diem), $125,164.75 in

attorney's fees and costs, $2,500 in default fees, and $1,185 in ACH fees), and such judgment is

excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A) and § 523(a)(6); and pursuant to

Federal Rule of Civil Procedure 54(d)(2)(B)(ii) shall accrue at an interest rate of 4.04% until paid.

## V.   CONCLUSION

A judgment consistent with this Memorandum Opinion will be entered on the docket

simultaneously herewith.

**SIGNED Thursday, August 13, 2026**

**Eduardo V. Rodriguez**
**Chief United States Bankruptcy Judge**